AZTEC PETROLEUM
CORPORATION, Appellant,

v.

MHM COMPANY, Appellee.

No. 05–85–01003–CV.

Court of Appeals of Texas,
Dallas.

Dec. 10, 1985.

Rehearing Denied Jan. 15, 1986.

John C. Andrews, Dallas, for appellant.

William N. Radford, J. Michael Wylie, Moore & Peterson, Dallas, for appellee.

Before WHITHAM, DEVANY and HOWELL, JJ.

WHITHAM, Justice.

Appellant, Aztec Petroleum Corp., appeals from a summary judgment in favor of appellee, MHM Company, which removed Aztec as general partner in a limited partnership and substituted MHM as general partner. In two points of error, Aztec contends that the trial court erred in denying its motion for summary judgment and in granting MHM's motion for summary judgment because neither Aztec nor all of the limited partners consented to the removal of Aztec and substitution of MHM as general partner and, therefore, the removal and substitution are invalid as a matter of law. We conclude that the partnership agreement of Aztec 80–A, Ltd., as thereafter amended, permits the removal of Aztec and substitution of MHM as general partner as a matter of law. Accordingly, we affirm.

The facts are undisputed. The controversy centers on section 11.12 of the partnership agreement. Section 11.12 states:

*Amendments.* Amendments to this Agreement may be proposed by the General Partner, or by the holders of 10% or more of the Units, by submission of a written proposal to the General Partner. Following such proposal, the General Partner shall submit to the Limited Partners, by notice in accordance with Section 11.1 of this Agreement, a verbatim statement of the proposed amendment, and when the General Partner deems it appropriate, an opinion of counsel as to the legality of such proposed amendment, and its recommendation with respect to the proposed amendment. Except as otherwise expressly provided herein or as otherwise required by law, this Agreement may only be amended upon the written consent of the holders of seventy percent (70%) or more of the Units; provided, however, that (i) any amendment which shall reduce the Partnership interest or enlarge the obligations of any Limited Partner shall require the consent of that Limited Partner; (ii) no amendment shall be made to Sections 7.2 or 8.1 hereof without the unanimous written consent of the Limited Partners; and (iii) the General Partner may, without the consent of any Limited Partner, amend any provisions of this Agreement to reflect any:

(1) change in the name or location or the principal place of business of the Partnership;

(2) admission of substituted or additional Limited Partners in accordance with this Agreement;

(3) reduction in, return of, or withdrawal of, all or a portion of any Limited Partner's capital contribution as permitted hereunder; and

(4) change which is necessary to qualify the Partnership as a limited partnership under the laws of any other state, or which is necessary or advisable in the opinion of the General Partner to insure that the Partnership will not be treated as an association taxable as a corporation for federal income tax purposes.

Thus, section 11.12 permits the owners of ten percent or more of the limited partnership units to submit a written proposal for amendment to the general partner. In the event of a written proposal, the general

partner must transmit a verbatim statement of the proposed amendment to the limited partners, accompanied by the general partner's recommendation for passage or defeat of the amendment. The limited partners then vote on the amendment and, applicable to the present case, if the owners of seventy percent or more of the limited partnership units vote in favor of the amendment, the amendment becomes effective.

In accordance with section 11.12, more than ten percent of the owners of the limited partnership units submitted to Aztec a written proposal for amendment of the partnership agreement. The critical proposed amendment provided:

6.6 *Removal and Replacement of a General Partner.* Upon receipt by the General Partner of written notice of removal from Limited Partners holding either 70% or more of the Units or 70% or more in interest of the Sharing Ratios of the Limited Partners (the "Removal Notice"), Aztec Petroleum Corp. or any successor General Partner to Aztec Petroleum Corp. as General Partner (the "Removed General Partner") shall be removed as General Partner of the Partnership. The Removal Notice shall be given to the General Partner as provided for in Section 11.1 of this Agreement. The Limited Partners signing the Removal Notice shall designate in the Removal Notice a new general partner (the "Substitute General Partner") to serve as General Partner under this Agreement. Effective as of 6:00 p.m., Dallas, Texas time, on the day of receipt of the Removal Notice, which day shall be referred to hereinafter as the "Removal Date," the Partnership interest of the Removed General Partner shall be converted automatically to a Special Limited Partnership interest as described in Section 6.7 and the Removed General Partner shall no longer be General Partner and shall have no right or authority to act on behalf of or bind the Partnership.

Before the proposed amendment, the partnership agreement did not provide for removal and substitution of a general partner. The proposed amendment, however, permitted the owners of seventy percent or more of the limited partnership units or sharing ratios to convert Aztec from general partner to special limited partner and to appoint a replacement general partner. After receiving the proposed amendment, Aztec mailed a letter to the limited partners accompanied by a copy of the proposed amendment. Aztec recommended against passage of the proposed amendment. Aztec did not submit to the limited partners an opinion of counsel as to the legality of the proposed amendment as permitted by section 11.12 of the partnership agreement. More than seventy percent of the units consented to the proposed amendment. Thereafter, limited partners owning more than seventy percent of the units gave Aztec written notice that it was removed as general partner and replaced by MHM as substitute general partner. Aztec, however, refused to step aside as general partner and continued to serve as general partner until the trial court rendered its judgment.

Aztec challenges its removal and MHM's substitution as general partner on three grounds: first, that the attempted change violates provisions of the Texas Uniform Partnership Act, TEX.REV.CIV.STAT. ANN. art. 6132b (Vernon 1970 & Supp. 1985) (the partnership act) and the Texas Uniform Limited Partnership Act, TEX. REV.CIV.STAT.ANN. art. 6132a (Vernon 1970 & Supp.1985) (the limited partnership act); second, that the attempted change violates contract law; and third, that the attempted change violates the agreement.

*Violation of the Statutes*

Aztec contends that because it did not consent to the admission of MHM as a substitute general partner, the partnership act was violated. The partnership act is applicable to limited partnerships through section 6(2) which provides: "this Act shall apply to limited partnerships except insofar as the statutes relating to such partnerships are inconsistent herewith." Article

6132b, § 6(2). Section 18(1)(g) of the partnership act states:

(1) The rights and duties of the partners in relation to the partnership shall be determined, subject to any agreement between them, by the following rules:

*       *       *       *       *       *

(g) No person can become a member of a partnership without the consent of all the partners.

Article 6132b, § 18(1)(g). From this Aztec argues that MHM could not legitimately become a partner in the partnership without Aztec's consent.

■ We conclude, however, that Aztec's reliance on section 18(1)(g) is misplaced in a situation where a partnership agreement sets forth the rights and duties of the parties. In such a situation the agreement, rather than the partnership act, controls and the courts look to the partnership act only for guidance. *Park Cities Corp. v. Byrd*, 534 S.W.2d 668, 672 (Tex.1976). In the present case, the partnership agreement differs from the provisions of section 18(1)(g) in two ways. The agreement permits additional partners to join the partnership upon approval of seventy percent of the partners, rather than upon unanimous consent. It also permits amendment of the agreement upon approval of seventy percent of the limited partnership units without limiting the scope of amendments so as to preclude an amendment providing for replacement of the general partner. Therefore, we conclude that these provisions, rather than section 18(1)(g), control and show that Aztec's consent to its own replacement as general partner is not required.

■ Aztec further argues that even if its own consent is not required for substitution of MHM as general partner, the limited partnership act requires the consent of all limited partners before one general partner may be substituted for another. Aztec relies on section 10(a) of the limited partnership act which provides:

A general partner shall have all the rights and powers and be subject to all the restrictions and liabilities of a partner in a partnership without limited partners, except that without the written consent or ratification of the specific act by all the limited partners, a general partner or all of the general partners have no authority to:

*       *       *       *       *       *

(5) Admit a person as a general partner.

Article 6132a, § 10. We do not agree with Aztec's interpretation of section 10(a). We conclude that, by its express language, section 10(a) of the limited partnership act is a limitation on the powers of a general partner. Section 10(a) clearly states that without the consent of all the limited partners, a *general partner* has no authority to admit a person as a general partner. Thus, we conclude that section 10(a) does not apply to a situation such as that in the present case where the partnership agreement may be amended by seventy percent of the limited partnership units and an amendment permitting removal and substitution of a general partner is adopted by such a majority.

■ It follows, and we so hold, that neither the partnership act nor the limited partnership act prohibit removal and substitution of a general partner in a limited partnership, even though the partnership agreement initially does not directly allow such action, if the partnership agreement provides a method for amendment and an amendment permitting substitution and removal of a general partner is adopted. We conclude, therefore, that the removal of Aztec and the substitution of MHM as general partner did not violate either the partnership act or the limited partnership act.

*Violation of Contract Law*

■ Aztec contends that its identity as sole general partner in the partnership agreement is a fundamental element of the agreement. As such, it argues that basic contract law and the intent of the parties as shown in the partnership agreement require unanimous consent before a new general partner can be substituted in Aztec's

place. We disagree. For the purposes of this opinion, we assume, but do not decide, that Aztec is correct in its assertion that contract law requires the unanimous consent of all parties to the contract before the fundamental nature of the contract may be changed. The partnership act, however, provides for alteration of this concept. Section 18(1) provides: "The rights and duties of partners in relation to the partnership shall be determined, *subject to any agreement between them,* by the following rules...." Article 6132b, § 18(1) (emphasis added). The partnership agreement in the present case specifically provides for the amendment of the agreement by less than a unanimous vote of the parties. We conclude, therefore, that any unanimity which may be required by contract law was met when all parties to the partnership agreement consented to be bound by amendments passed by "the holders of seventy percent (70%) or more of the Units."

■ Furthermore, we do not agree with Aztec's assertion that the partnership agreement itself shows that the parties intended to require unanimous consent before the general partner could be replaced. In making such an argument, Aztec relies on sections 8.5 and 10.2 of the partnership agreement. Those sections provide:

8.5 *Withdrawl, (sic) Dissolution or Bankruptcy of the General Partner.* Except as otherwise provided in Section 10.2 hereof, the withdrawal, dissolution or bankruptcy of the General Partner shall cause a dissolution of the Partnership and shall require a liquidation of the assets of the Partnership. Notwithstanding any provision hereof to the contrary, the General Partner agrees that it will not voluntarily withdraw as General Partner until after December 31, 1985. At any time after December 31, 1985, the General Partner may withdraw as General Partner upon written notice to the Limited Partners.

10.2 *Right to Continue the Partnership's Business.* Upon the withdrawal, dissolution, or bankruptcy of the General Partner, the remaining Limited Partners ... shall have the right, but not the obligation, exercisable by the vote of all of the Limited Partners, ... to continue the Partnership's business.... If, upon the withdrawal, dissolution or bankruptcy of the General Partner the Limited Partners elect to continue the Partnership business, the Limited Partners shall, by the vote of all of the Limited Partners, designate one or more persons to be the new general partner or general partners,....

Aztec's reliance on these two sections, however, ignores the fact that the situation in the present case is not the situation addressed by sections 8.5 and 10.2 and further ignores the fact that the amendment provisions of section 11.12 of the partnership agreement do not except from amendment fundamental rights, duties, and obligations of the parties to the contract. Having agreed to a contract which contained a mechanism for amendment upon approval of seventy percent of the partnership units, we conclude that Aztec cannot now create an exception for what it deems to be a fundamental element of the contract.

Consequently, we conclude that there has been no violation of contract law in the removal of Aztec and substitution of MHM as general partner.

*Violation of the Partnership Agreement*

■ Aztec insists that substituting MHM as general partner violates the express terms of the partnership agreement. Aztec relies on section 7.1 of the agreement which provides:

*No Right to Participate in Management.* Except as otherwise expressly provided herein, the Limited Partners shall have no right to, nor shall they, bind the Partnership or take any part in or interfere with the conduct, control or management of the Partnership's business.

From this, Aztec argues that changing the general partner constitutes interference by the limited partners in the management of the partnership. We disagree. Section

8(b)(5)(B) of the limited partnership act provides:

(b) A limited partner does not take part in the control of the business by virtue of possessing a right to:

\* \* \* \* \* \*

(5) Approve, individually or by a majority of the limited partners (by number, financial interest, or as otherwise provided in the certificate), material matters that are stated in the certificate, such as:

\* \* \* \* \* \*

(B) Amendment of the partnership certificate or agreement.

Article 6132a, § 8(b)(5)(B). Thus, the limited partnership act specifically provides that exercising a right to amend a partnership agreement does not constitute taking part in the control of the business by the limited partners. Because the limited partnership act does not limit the scope of permissible amendments, we conclude that merely by amending the agreement the limited partners do not take part in the control of the business, regardless of the effect such an amendment might have.

Moreover, section 7.1 of the partnership agreement, upon which Aztec relies, states: "Except as otherwise expressly provided herein...." Even if it could be argued that an amendment which replaces one general partner with another constitutes taking part in the control of the business of the partnership, we conclude that once amendment 6.6 was adopted according to the method set out in the partnership agreement, replacement of MHM for Aztec fell within the "except as otherwise expressly provided herein" language of section 7.1. We cannot see how proposing, voting on and approving an amendment to the partnership agreement in the exact method provided within it can violate the express terms of the partnership agreement. Consequently, we conclude that removal of Aztec and substitution of MHM as general partner did not violate the partnership agreement.

In summary, we conclude that removal of Aztec and substitution of MHM as general partner violated neither statutory nor contract law and was consistent with the partnership agreement. Accordingly, we affirm the judgment of the trial court.